IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

OWEN F. SILVIOUS,

    Plaintiff

v.                                        Civil Action No. 5:07CV145

MIDLAND CREDIT MANAGEMENT, INC.,
ENCORE CAPITAL GROUP, INC.,
ACCOUNT SERVICES, APPLIED CARD
BANK, AFNI, INC., LTD FINANCIAL SERVICES
LP.,

    Defendants.

**ORDER GRANTING DEFENDANT'S
MOTION FOR ATTORNEYS FEES**

**I. Introduction**

A.    Background

*Pro se* plaintiff, Owen F. Silvious ("Plaintiff"), filed a lawsuit against the above-named defendants in an action alleging violations of the Fair Debt Collection Practices Act ("FDCPA"). All of the defendants were dismissed from this action with the exception of AFNI, Inc. ("Defendant"). Specifically, Plaintiff alleged that Defendant violated 15 U.S.C. § 1692(e)(11) by not disclosing that communications sent to Plaintiff were from a debt collector. Plaintiff sought $16,000 from Defendant plus attorney's fees and costs.

B.    The Motion

    Defendant's Motion for Award of Attorneys Fees.[1]

C.    Decision

---

[1] Doc. No. 116.

1

Defendant is **AWARDED** attorney's fees.

## II. Facts

1.	Plaintiff filed a complaint pursuant to the Fair Debt Collection Act against multiple defendants.[2]

2.	On December 7, 2007, Plaintiff filed an amendment to the original complaint.[3]

3.	Plaintiff subsequently settled his claims and dismissed his complaint as to all but one defendant, AFNI, Inc. ("Defendant").

4.	On December 12, 2008, Defendant filed its First Motion for Summary Judgment.[4]

5.	Plaintiff filed a Response to Defendant's Motion for Summary Judgment on January 28, 2009,[5] to which Defendant filed a Reply on February 4, 2009.[6]

6.	On June 29, 2009, this Court issued a Report and Recommendation that Defendant's First Motion for Summary Judgment be Granted.[7]

7.	Plaintiff filed his Objections to the Report and Recommendation on July 17, 2009,[8] to which Defendant filed a Response on July 20, 2009.[9]

---

[2] Doc. No. 1.

[3] Doc. No. 9.

[4] Doc. Nos. 77 & 78.

[5] Doc. No. 86.

[6] Doc. No. 87.

[7] Doc. No. 106.

[8] Doc. No. 108.

[9] Doc. No. 109.

8. Plaintiff filed a Response to Defendant's Response on July 27, 2009.[10]

9. Subsequently, on August 3, 2009, the District Court issued a Memorandum Opinion and Order Affirming and Adopting this Court's Report and Recommendation Granting Defendant AFNI Inc.'s Motion for Summary Judgment, Denying as Moot Plaintiff's Motion for Continuance and Granting Defendant AFNI, Inc.'s Motion to Strike "Plaintiff's Additional Reply to Defendant AFNI, Inc.'s Motion for Summary Judgment."[11]

### III. Discussion

Defendant argues that it is entitled to attorneys fees under both the Fair Debt Collection Practices Act ("FDCPA") and the West Virginia Consumer Credit and Protection Act ("WVCCPA") because Plaintiff filed his complaint in bad faith and for the purpose of harassment. Specifically, Defendant argues that this Court may infer bad faith from the nature of the correspondence between Plaintiff and counsel for Defendant, Plaintiff's general litigious nature, Plaintiff's persistence in prosecuting this matter even after provided consistent case citations that did not support his position, Plaintiff's refusal to accept the decision of the Court, Plaintiff's threats to increase the cost of litigation unless he is paid, and Plaintiff's reliance upon case law that is inapplicable to the facts of this matter.

Plaintiff contends that Defendant is not entitled to attorneys fees because he did not bring the action in bad faith or for the purpose of harassment. Additionally, Plaintiff contends that because he is proceeding *in forma pauperis*, 28 U.S.C. § 1915, which does not provide for attorney fees against a prisoner proceeding *in forma pauperis*, controls.

---

[10] Doc. No. 110.

[11] Doc. No. 111.

Section 1692k(a)(3) provides that if a court finds "that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." 15 U.S.C. § 1692k(a)(3). "'[B]ad faith is not simply bad judgment or negligence, but implies the conscious doing of a wrong because of a dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will.'" Black v. Equinox Financial Management Solutions, Inc., 444 F.Supp.2d 1271, 1275 (N.D. Ga. 2006) (quoting Shah v. Collecto, Inc., 2005 WL 2216242, at 14 (D. Md. 2005) (internal citations omitted)). A bad faith law suit is a suit "'so completely without hope of succeeding that the court can infer that the plaintiff brought the suit to harass . . . rather than to obtain a favorable judgment.'" Id. (quoting Glick v. Koenig, 766 F.2d 265, 270 (7th Cir. 1985).

In Black, the Court found that the plaintiff brought the suit in bad faith and awarded attorneys fees to defendant. Plaintiff filed suit against defendant under 15 U.S.C. § 1692e(10) alleging that defendant lied when it promised to investigate why Asset Acceptance LLC was reporting his son's delinquent account on plaintiff's credit file. Id. at 1273. The Court found that plaintiff's suit was based on little more than a hunch. Plaintiff filed suit after obtaining his latest credit report reasoning that representatives from the defendant company must have lied when representing they would look into the matter. However, as the Court stated, had plaintiff investigated the matter, plaintiff would have realized that the representatives did exactly what they promised to do. In the Court's view, that plaintiff "continued to press his claim through summary judgment could only be attributed to a bad faith effort to run up attorneys' fees and costs in hopes of a last minute settlement or to a similarly bad faith gamble that the claim might

4

proceed to trial despite its lack of merit." Id. at 1275.

An indication of bad faith is even more prevalent in the case at bar.  Plaintiff filed this action after receiving a series of letters from Defendant contacting him in connection with a debt he allegedly owed to Verizon.  After receiving responses in writing from Plaintiff clarifying that he had never opened a Verizon account and did not owe the alleged debt, Defendant sent two final letters to Plaintiff informing him that the debt had been settled and that Plaintiff's account would be closed. These letters did not inform Plaintiff they were a from a debt collection agency, nor did they advise Plaintiff that any information obtained from him would be used for the purpose of collecting the debt.  Subsequently, Plaintiff filed suit against Defendant alleging that the final two letters violated the Fair Debt Collection Practices Act (FDCPA) because the letters omitted language required by the statute in communications from collection agencies to debtors regarding the collection of a debt.  Ultimately, Defendant was granted summary judgment after the District Court concluded that the letters had no connection to collection of a debt and therefore did not need to include the statutory required language.

Admittedly, Plaintiff has an extensive background in legal matters.[12]  Specifically, Plaintiff states that he has "won more civil actions in court than [he] has lost and [he is] proud of [his] record during the past 15 years in which [he has] been doing legal matters."[13]  Additionally, Plaintiff states that he "did alot [sic] of legal research on the matter" before filing this action.[14]  If Plaintiff had the proclaimed experience and knowledge, Plaintiff would have realized that his

---

[12] Doc. No. 116, P. 21.

[13] Doc. No. 116, P. 21.

[14] Doc. No. 116, P. 21.

claim had no merit. However, or in spite of the realization, Plaintiff continued to press his claim despite its frivolity. Not only did Plaintiff continue to press the claim through the Court system, Plaintiff continually sent letters to Defendant's counsel informing him that Plaintiff would not slow in his press of the suit and requesting that Defendant settle the matter as originally proposed.[15] Plaintiff also threatened to file a class action suit if the two sides could not "settle this matter immediately,"[16] and again threatened the class action suit after receiving no response on his settlement proposal.[17]

It is clear from Plaintiff's correspondence that he filed, and pressed, his claim for monetary gain only. Aside from the continuous settlement proposals and threats to file a class action suit, Plaintiff's settlement demands increased with every letter. Additionally, in a letter dated May 7, 2009, to Defendant's counsel, Plaintiff states his belief as to Defendant's likelihood of success:

> I don't think your firm has the best interests of your client in mind because it is going to cost your client AFNI, Inc., much more to keep on trying to defend the action than the small amount I am willing to settle for in my letter dated April 24, 2009. The court cannot and will not issue a judgment in favor of your client based on the cases I have cited and the statute. Even if the court did issue judgment in favor of your client, I will appeal that decision to the Fourth Circuit where I would definitely win my case against AFNI, Inc. Your client cannot win the argument I have made against them.[18]

This strong, vexatious language is consistent with the language used by Plaintiffs throughout his series of letters to Defendant's counsel. Ironically, the District Court ***did*** issue a judgment in

---

[15] Doc. No. 116, Ps. 21, 22, 23

[16] Doc. No. 116, Ps. 23.

[17] Doc. No. 116, Ps. 24 & 34.

[18] Doc. No. 116, P. 36.

favor of Defendant - and on summary judgment, which shows that Plaintiff did not have a meritorious argument and continued merely for the purpose of harassing Defendant and obtaining a money judgment.

Plaintiff cites no authority to suggest his behavior was not out of ill will but makes three arguments:

1) Plaintiff contends that he did not bring the suit in bad faith;

2) Under 28 U.S.C. § 1915, he is not responsible for attorney fees; and

3) He was not given proper notice of the summary judgment decision, and therefore, the decision should be reversed.

The Court will address each of Plaintiff's argument in turn.

First, Plaintiff argues that he did not bring the suit in bad faith as required for an award of attorney's fees under § 1692k(a)(3). Plaintiff cites no authority, and the Court is unable to find any authority, which states that an affirmation by Plaintiff that the suit was not filed in bad faith is to be given special deference. The objective actions of Plaintiff and the record of the case suggest that Plaintiff had no legal basis to file the claim and filed the claim purely to harass Defendant to obtain a money judgment. Thus, this argument fails.

Second, Plaintiff argues that 28 U.S.C. § 1915 does not allow a court to award attorney's fees against a *pro se* prisoner proceeding *in forma pauperis*. Section 1915 provides that judgments against prisoners may include the payment of costs. 28 U.S.C. § 1915(f) (2009). Plaintiff alleges that "[i]f Congress had intended that attorney fees be awarded against a pro se prisoner proceeding in forma pauperis, it would have clearly stated that in 28 U.S.C. 1915;"[19]

---

[19] Doc. No. 121.

because Congress did not include attorneys fees, attorneys fees cannot be awarded. Additionally, Plaintiff argues that 28 U.S.C. § 1915 is a more specific statute than 15 U.S.C. § 1692, relied upon by Defendant for attorneys fees, and the more specific statute should be followed.  Again, Plaintiff's argument is without merit.

Section 1915 addresses proceedings in *in forma pauperis* cases in general; while, § 1692 specifically addresses the practices for filing a claim under the Fair Debt Collection Practices Act.  Section 1692 is then more specific than the general provisions under § 1915.  Once a *pro se in forma pauperis* litigant is in court, he is subject to the relevant laws and rules of court.  Moon v. Newsome, 863 F.2d 835 (11th Cir. 1989).  Section 1692 provides for attorney's fees for the prevailing party; therefore, Defendant is entitled to attorney's fees under the more specific statute.

Additionally, the courts of the Northern District of West Virginia have a history, albeit slight, of assessing fees against a *pro se in forma pauperis* plaintiff.  In Marks v. Calendine, the District Court imposed fees and costs against a non-prevailing plaintiff proceeding *in forma pauperis*.  Marks v. Calendine, 80 F.R.D. 24, 31 (N.D. W.Va. 1978).  The Court granted the fees as a way of dissuading potential plaintiffs from filing cases shown to have a "complete absence of merit coupled with the intent to use the Court as a vehicle of harassment."  Id.  Certainly, it was this factual situation the District Court had in mind when crafting this language.

While Plaintiff's argument is very clever, he cites no authority for his positions, and the Court can find none.  Further, the FDCPA provides for attorney's fees, and most importantly, when litigators abuse the legal process, there must be attorney fees in order to attempt to curb, if not, stop, abuse by at least making the abuser pay for the wrongful conduct.

Plaintiff's third and final argument is that the summary judgment was improper because he, a *pro se* prisoner, was not given notice at least 10 days before the issuance of summary judgment for Defendant in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Again, Plaintiff's argument lacks merit. The Court in Roseboro reversed a summary judgment for the defendant. Roseboro, 528 F.2d at 310. Despite the plaintiff's failure to file any counter-affidavits controverting those submitted by the defendant, the District Court granted summary judgment for the defendant. Id. Ultimately, the Fourth Circuit reversed finding that the *pro se* plaintiff had no notice before the entry of summary judgment of the requirements of the summary judgment rule, and at a minimum, the *pro se* plaintiff should have been provided with the requirements of the summary judgment rule. Id. This rule does not apply to the facts of this case. Not only did Plaintiff have notice of Defendant's motion for summary judgment, Plaintiff filed a Notice of Intent to File a Response to Defendant's Motion for Summary Judgment,[20] a Motion for Extension of Time to File a Response to Defendant's Motion for Summary Judgment,[21] and a Response to Defendant's Motion for Summary Judgment.[22] This argument simply lacks merit.

## IV. Decision

Defendant is **AWARDED** attorney's fees. Plaintiff shall pay to Defendant within two weeks of the date of this Order the sum of Three Thousand Nine Hundred and Twenty Dollars (**$3,920.00**) as reasonable expenses incurred in relation to this action.

---

[20] Doc. No. 82.

[21] Doc. No. 83.

[22] Doc. No. 86.

Filing of objections does not stay this Order. Any party may, within fourteen (14) days after being served with a copy of this Order, file with the Clerk of the Court written objections identifying the portions of the Order to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to District Court Judge of Record. Failure to timely file objections to the Order set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Order.

The Clerk of the Court is directed to transmit a copy of this Order to parties who appear *pro se* and any counsel of record, as applicable.

DATED: November 25, 2009

/s/ *James E. Seibert*
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE